UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>FERMIN OCAMPO-TELLEZ, and MICHAEL GOMEZ | No. 20 CR 331<br><br>Judge Matthew F. Kennelly |

**GOVERNMENT'S RESPONSE TO DEFENDANT MICHAEL GOMEZ'S SECOND SUPPLEMENTAL MOTION *IN LIMINE***

The UNITED STATES OF AMERICA, by and through its attorney JOHN R. LAUSCH, JR., United States Attorney for the Northern District of Illinois, respectfully requests that this Court deny defendant Michael Gomez's Second Supplemental Motion *in Limine* (Dkt. 126).

As a preliminary matter, defendant Gomez seems to be calling for the government to reply to his response to the Government's Motion *in Limine* (Dkt. 102) regarding the proposed testimony of Aurora Police Officer Colin Griffin. The government had moved for the admission of Officer Griffin's testimony, who was familiar with the defendants, to identify the defendants in the ATM video as well as identify them in court. As set forth in the government's motion, this type of testimony would qualify as lay opinion testimony pursuant to Federal Rule of Evidence Rule 701. The defendants' factual stipulation regarding identity resolved the need for Officer Griffin's testimony. The Government's Motion *in Limine*, on this point, is moot and no reply is necessary.

The thrust of the defendant's motion is his objection to the testimony of FBI Special Agent Shanna Saunders. Defendant Gomez's motion appears to conflate the proposed identification testimony of Officer Griffin with the testimony of the case agent, regarding her investigation of this crime.

As part of her investigation of the events of May 31, 2020, Agent Saunders reviewed video from both the ATM and a drone. In her testimony, Agent Saunders will describe the participants in the events of May 31, 2020, including the defendants, and their actions that evening. Agent Saunders will not provide any opinion testimony as to the purpose or intent of the defendants. Her testimony will include playing and describing both videos to show the jury (1) where the defendants are on the videos; and (2) the defendants' actions on the video.

Having Agent Saunders describe the video while the video is playing is permissible. The parties have reached testimonial stipulations regarding both the ATM and the drone videos. As these stipulations reflect, there are appropriate foundations to admit both videos in evidence, and they are both authentic and admissible. *See* agreed stipulations, attached hereto as Exhibit A. Once the videos have been admitted in evidence, it is appropriate for the case agent to describe the contents of the videos, even if she was not an eyewitness to the crime. *See United States v. Wallace*, 753 F.3d 671, 675 (7th Cir. 2014) ("The video of the defendant in this case handing crack to his nephew was a picture; it was not a witness who could be cross-examined. The agent narrated the video at trial, and his narration was a series of statements, so he was subject to being cross-examined and was, and thus

2

was 'confronted.'); *see also United States v. Jackson*, 940 F.3d 347 (7th Cir. 2019) (defendant failed to identify how he was prejudiced by an investigator describing defendant's actions captured on video by a nontestifying cooperator). This is neither lay nor expert opinion testimony; it is based on the case agent's personal knowledge of the evidence in the case, to include interviewing the defendants and viewing the videos. Agent Saunders will not use the video to speculate or opine on the ultimate issue of whether defendants participated in a conspiracy. Her testimony will be confined to description supported by the admissible contents of the videos themselves.

Agent Saunders will not (and cannot) say that she has personal knowledge of what happened on May 31, 2020, because she was not present at the scene of the crime. She may, of course, be cross-examined on this point, and it will go to the weight, not the admissibility, of her testimony. She can, however, testify from her personal knowledge that she collected evidence, including multiple admissible videos of the incident; evaluated that evidence; used the evidence to locate the defendants; and spoke with the defendants about the incident.

Defendant's citation to *United States v. Cunningham*, 462 F.3d 708 (7th Cir. 2006), is inapposite. *Cunningham* involved the government's introduction of testimony regarding a Title III application, which the Seventh Circuit found unduly prejudicial because, "[T]he jury was infected by the opinions of these unnamed government attorneys and agents. The government witness was improperly vouching for how good the evidence was. Furthermore, the various procedures (i.e., safeguards) that were detailed served only to bolster the credibility of the unnamed attorneys'

and agents' respective determinations." *Cunningham*, 462 F.3d at713. Here, Agent Saunders has been identified, she can testify to the facts regarding her investigation without bolstering, and she can be cross-examined about her actions in this investigation.

As the testimonial stipulations on the videos reflect, an alternative to having Agent Saunders describe the video would be for the government to call the two witnesses who (1) created the videos; and (2) observed the events occurring on the videos in real time on May 31, 2020. *See* Exhibit A. If called to testify, these witnesses would testify that the videos fairly and accurately depicted events as they unfolded on May 31, 2020. With this foundation, these two witnesses could likewise describe the events depicted on the videos for the jurors, however the witnesses would not be able to identify the defendants.

Agent Saunders, however, can identify the defendants and having her point out the defendants in the video would assist the jury. Both videos portray a crowd of approximately 20 to 30 people. Even with a factual stipulation regarding defendant's presence and appearance on May 31, 2020, picking out the defendants in the crowd could present a challenge to jurors not as familiar with both the evidence and the defendants as the agent who investigated the case.

To this point, her testimony will relieve a concern raised by counsel for defendant Gomez. During the pretrial walk-through on June 17, 2021, defense counsel expressed concern about jurors correctly identifying defendant Gomez in the videos, because they will be comparing his masked face in court with his unmasked

4

face, among a crowd, in the videos. Descriptive testimony from Agent Saunders about the video evidence would eliminate juror confusion and help them appropriately evaluate the evidence.

## CONCLUSION

WHEREFORE, for the foregoing reasons, the government respectfully requests that the Court deny defendant's Second Supplemental Motion *in Limine*.

Respectfully submitted,

JOHN R. LAUSCH, JR.
United States Attorney

By: */s/ Mary Katherine McClelland*
MARY KATHERINE MCCLELLAND
BARRY JONAS
Assistant United States Attorneys
219 South Dearborn Street
Chicago, Illinois 60604
(312) 353-5300

Dated: June 20, 2021