UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No.: 20 CR 331-1 |
| v. | Judge Matthew F. Kennelly |
| MICHAEL GOMEZ | |

**GOVERNMENT'S POSITION PAPER ON SENTENCING**

The UNITED STATES OF AMERICA, by its attorney, JOHN R. LAUSCH, JR., United States Attorney for the Northern District of Illinois, hereby submits its position paper on sentencing. For the reasons outlined below, the government respectfully requests that the Court impose a sentence within the applicable Guidelines range of 10 to 16 months' imprisonment and a three-year term of supervised release.

**I. BACKGROUND**

On July 9, 2021, Michael Gomez ("defendant") was charged by indictment with one count of conspiracy to commit bank theft, in violation of Title 18, United States Code, Section 371. ECF No. 31. Defendant was initially tried by jury, and the Court declared a mistrial in light of the jury's inability to arrive at a unanimous verdict. ECF No. 136. On March 15, 2022, after a bench trial, defendant was found guilty of the charge contained in the indictment. ECF No. 198. Sentencing is scheduled for June 10, 2022. *Id.*

The details of defendant's offense conduct were admitted in evidence before this Court at both trials, and are also contained in the criminal complaint (ECF No.

1), the Presentence Investigation Report ("PSR") (ECF No. 204), and the Government's Version ("GVO"), which is attached to the PSR.

In summary, on May 31, 2020, a group of individuals, including the defendant, attempted to steal U.S. currency from the Automated Teller Machine ("ATM") in the drive-through of the First Midwest Bank, at 2 South Broadway, Aurora, Illinois. *See* PSR, ¶ 5. At approximately 9:38 p.m., the defendant, along with co-defendants Fermin Ocampo-Tellez, Diego Vargas, and a group of other individuals, gathered in front of the ATM machine. GVO at 1; *see also* PSR, ¶ 5. The group worked together to attempt to break into the ATM and steal the currency stored inside. PSR, ¶¶ 5-6. The defendant, in combination with others in the crowd, tried to move the ATM from where it was anchored in the bank's drive-through. *Id.* at ¶ 6. Several members of the group, including the defendant and his co-defendants, grabbed onto the ATM and used their combined body weight to try to move or tip the ATM with the intention of stealing the money stored within it. *Id.* The defendant, his codefendants, and others also pulled apart a street sign, which they used to continue hitting the ATM, in order to take the money inside. *See id.* During his post-arrest statement to the FBI, defendant also admitted to hitting the ATM with a baseball bat, although this was not captured on video. *Id.*

## II. THE GUIDELINES CALCULATION IN THE PSR IS CORRECT

The government agrees with the Guidelines calculation in the PSR. The base offense level is six, pursuant to Guideline § 2X1.1(a) and Guideline § 2B1.1(a)(2). Pursuant to Guideline § 2B1.1(b)(1)(D), the base offense level is increased by six levels, because the intended loss amount was more than $40,000, but less than

$95,000. Pursuant to Guideline § 2B1.1(b)(16)(B), the offense level is increased by two levels, as the offense involved the possession of a dangerous weapon, namely, a baseball bat. Then, pursuant to Guideline § 2X1.1(b)(2), the total offense level is reduced by 3 levels to 11, because the defendant did not complete the object of the conspiracy—namely, breaking into the ATM.

With respect to defendant's criminal history points, the government's calculation differed from Probation's. Pursuant to Guideline § 4A1.2(c)(1)(B), the government assessed one additional criminal history point for defendant's July 2020 misdemeanor disorderly conduct conviction, because that prior offense conduct is similar to the instant offense. Moreover, the nature of defendant's actions in disturbing the peace during both crimes suggests a pattern of criminal behavior. *See* Note 12(A)(v), U.S.S.G. § 4A1.2. However, even without this additional criminal history point, the defendant's criminal history category is II.

With a total offense level of 11 and a criminal history category of II, the advisory Guidelines range is 10 to 16 months' imprisonment.

This offense is a Class D felony. PSR, ¶ 81; 18 U.S.C. § 3559(a)(4). The Guidelines range for supervised release is at least one year, but not more than three years. *Id.*; *see also* U.S.S.G. § 5D1.2(a)(2); 18 U.S.C. § 3583(b)(2).

### III. THE FACTORS SET FORTH IN 18 U.S.C. § 3553(A) WARRANT A SENTENCE WITHIN THE GUIDELINES RANGE

The advisory Guidelines range is the starting point and initial benchmark for determining the appropriate sentence for defendant. *United States v. McLaughlin*, 760 F.3d 699, 708 (7th Cir. 2014). Although a sentence within the Guidelines range

3

is presumptively reasonable, *United States v. Cano-Rodriguez*, 552 F.3d 637, 639 (7th Cir. 2009), the court must consider the factors set forth in 18 U.S.C. § 3553(a) in determining an appropriate sentence. Sentences within the advisory Guidelines range help avoid unwarranted sentencing disparities. *See United States v. Reyes-Medina*, 683 F.3d 837, 841 (7th Cir. 2012) (a sentence within the advisory guidelines range necessarily complies with 18 U.S.C. § 3553(a)(6)); *see also United States v. Orsburn*, 525 F.3d 543, 547 (7th Cir. 2008) (courts avoid sentencing disparities by starting with the advisory guidelines range and making adjustments at the margin). In this case, a sentence within the advisory Guidelines range is sufficient, but not greater than necessary, to reflect the seriousness of defendant's offense, promote respect for the law, provide just punishment for defendant's crime, afford adequate deterrence, and protect the public from future crimes by the defendant.

      A.      **Term of Imprisonment**

The nature and circumstances of defendant's crime warrant a prison sentence within the Guidelines range. *See* 18 U.S.C. § 3553(a)(1). On the evening of May 31, 2020, defendant approached a First Midwest Bank ATM in Aurora, Illinois, as an unknown individual started hitting it with a baseball bat in an attempt to steal the currency inside. *See* PSR, ¶ 5. As members of the crowd took turns hitting the ATM with the bat, defendant initially stood in the crowd, watching the action and occasionally approaching the ATM to inspect whether the damage was releasing any money from the machine.

When hitting the ATM with a bat did not work, defendant and others in the crowd used their combined body weight, trying to push and pull the ATM from where

4

it was anchored. PSR, ¶ 6. Defendant and his codefendants also worked together to pull apart a street sign, the poles of which members of the crowd used to continue hitting the ATM. *Id.* The defendant moved away from the ATM several times, but rather than choosing to walk away, he kept returning to work on it some more. Finally, defendant himself hit the ATM with the baseball bat, but—as he told investigators—he stopped after a couple of swings because he knew that it was wrong. Although the defendant and the rest of the crowd were unsuccessful in breaking into the ATM, the damage to the ATM was significant, resulting a loss to the bank of more than $10,000.

Defendant's history and characteristics fail to mitigate his conduct. *See* 18 U.S.C. § 3553(a)(1). Defendant is currently 21 years old, and committed this offense at the age of 19. PSR, ¶ 47. This offense is the culmination of an extended history of arrests throughout defendant's teenage years, including arrests for violent offenses. *See id.* at ¶¶ 38-45. In 2018, defendant was adjudicated delinquent and sentenced to 12 months' juvenile detention for aggravated battery to a peace officer. *Id.* at ¶ 32. Defendant began acquiring adult arrests in 2019, including for a misdemeanor disorderly conduct offense. *Id.* at ¶ 33. He was on bond for that offense at the time of this crime. *Id.*

As the Sentencing Recommendation notes, defendant lacks structure. Sent. Rec. at 2. While defendant benefits from the support and encouragement of his family, the lack of other sources of support suggests the need for a sentence that deters defendant from continuing his criminal behavior in the future. *See* 18 U.S.C.

5

§ 3553(a)(2)(B). Defendant failed to complete high school, choosing to drop out rather than continue his education at an alternative high school after being expelled from his original high school. PSR, ¶ 67. He had no employment experience until being placed on pretrial release in this case, and what jobs he had during pretrial release, he did not keep. *Id.* at ¶¶ 69-73. Moreover, there were a number of inconsistencies between defendant's statements about his history during the presentence investigation and his mental health evaluation in October 2021. *See id.* at ¶¶ 61, 63-64. These obvious discrepancies suggest that defendant is not taking seriously his possible sentence or the need to use the resources available to make needed changes in his conduct and habits. As it appears to be difficult for him to appreciate the seriousness of his criminal conduct in this case, there is reason for concern about his compliance with the law and court orders in the future. *See* 18 U.S.C. § 3553(a)(2)(A). A sentence in the Guidelines range would reflect the seriousness of defendant's offense, promote respect for the law, provide adequate deterrence, and protect the public from future crimes by defendant.

### B. Supervised Release

The government has no objections or additions to the conditions of supervised release in the PSR. A term of supervised release is appropriate if the court imposes a sentence of imprisonment of at least one year. *See* § 5D1.1(a)(2). The government agrees with Probation that the maximum supervised release term of three years should be imposed in this case. The nature of this offense and the history and characteristics of the defendant outlined above make a three-year term of supervision appropriate. *See* 18 U.S.C. § 3583(c). Finally, the government is requesting that the

defendant be responsible for paying restitution, which a term of supervised release will help accomplish. *See* 18 U.S.C. § 3583(c); *see also* 18 U.S.C. § 3553(a)(7).

### C. Restitution

The government is requesting that the Court impose restitution in the amount of $10,846.75, jointly and severally with any liable co-defendant. *See* 18 U.S.C. § 3663A(c)(1)(A)(i); *see also* 18 U.S.C. § 3553(a)(7).

### IV. CONCLUSION

For these reasons, the government respectfully requests that the Court impose a sentence within the applicable Guidelines range of 10 to 16 months' imprisonment, as well as a three-year term of supervised release.

> Respectfully submitted,
>
> JOHN R. LAUSCH, JR.
> UNITED STATES ATTORNEY
>
> By:   /s/ Mary Katherine McClelland
> Mary Katherine McClelland
> Barry Jonas
> Assistant United States Attorneys
> United States Attorney's Office
> 219 S. Dearborn St., 5th Floor
> Chicago, Illinois 60604
> (312) 353-0517

Dated: May 27, 2022